Judge Owsley
delivered the opinion.
M’Kinny sold and conveyed, with warranty, to Scott, a tract of land containing 300 acres. Scott sold and conveyed, with warranty, about 130 acres, part of the same tract, to Gilpin; and about 20 acres to Watts. Watts also purchased, and obtained a conveyance with warrantyj from Gilpin, for about 17 acres of the part purchased by Gilpin from Scott. Possession was received by Scott from M’Kinny. and by Scott delivered over to Gilpin and Watts.
To obtain the possession of the land, Hardwick and ah, beirs at law to Hall, claiming under an adverse title, brought an ejeetmant against Gilpin and Watts, and finally sue- *269 ceeded in recovering judgment for the land conveyed to Güpin and Watts by Scott.
A suit was then brought at law in the name of Scott, against M’Kinny, on his covenant of warranty, and judgment obtained against him for the amount of purchase money given for the land, with interest.
M’Kinny then exhibited bis bill in equity, with injunction, against the judgment recovered against him on his covenant of warranty, alleging, among other things, (bat when Resold the land to Gilpin and Watts, he held a regular title derived from the commonwealth under an entry of 1000 acres, made in the name of Richard Barbour, the 18tb of May, 1780; that the entry of Barbour contains the requisite precision and certainty, and has been duly and properly surveyed and carried into grant; that tire entry under which the heirs of Hall claim, though carried into grant by a patent elder in date than that under which be claims, is vague and uncertain, and has been illegally and fraudulently surveyed. He moreover charges, that at the lime he sold and conveyed the land to Gilpin and Watts, there were lasting and valuable improvements on the land, for which Gilpin and Watts have obtained compensation from the heirs at law of Hall, under the provisions of the occupying claimant law; that, supposing no attempt would be made in the action brought against him at law, to recover more than was just, and being unable to prove, otherwise than by a discovery from Scott, the valtje of the improvements on the trial at law; that he has learned, instead of giving him credit for the amount of those improvements, Scott has recovered judgment for the full amount of the consideration paid for the land, together with interest— He makes Scott, Gilpin, the heirs of Hall and Hart’s heirs, who be alleges pretend some claim to the land, defendants; calls for a discovery of the value of the improvements on the land at the time when he sold it to Scott; asked for the court, finally, to decree a perpetual injunction against the judgment at law; and that the heirs of Hall and Hart may be compelled to surrender their elder legal title to Gilpin and Watts; or if it may be thought more equitable, that a decree be rendered compelling Scott, Gilpin and Watts to reconvey their interest in the land to him, (M’Kinny,) and that the heirs of Hall and Hart be compelled to surrender their- title to him; and he moreover asks for general relief, &c.
*270 Scott, by bis answer, admits the purchase and sales, a* in the bill of M’Kinnj alleged, and that there were upoft the land considerable improvements when he purchased from ¡Vl’Kinny; but insists that Vl’Kinny should not obtain a credit therefor He denies that the entry of Barbour; Under which M’Kinny derives title, contains the requisite precision and cer ainty toa valid entry; alleges that be is willing, on receiving the amount of his judgment at law, to Convey to M’Kinny any interest he holds in the land sold by bim to Scott, and insists on a dissolution of the injunction, and tiiat he may proceed to have the bent-fit of his judgment at law.
Gilpin and Watts, each, deny the entry of Barbour 1⅛ be valid; and Gilpin expresses a willingness, on receiving bis purchase money with interest, to convey to M’Kinny a* by interest be may be thought to possess in the land Owned by him; and Watts charges, that after the judgment wai Obtained by Hall’s heirs against him, and before the earn* meneernent of this suit by M’Kinny, he purchased fronl the heirs, and obtained from them an obligation to convey to him their title to so much of the land recovered by them, bs he had previously purchased from Scott and Gilpin; and that since the commencement of the suit by iVl’Kinny, he has also purchased from the heirs of Hall their interest in the land to which Gilpin claimed under bis purchase from Scott; he admits, that since the commencement of the suit by M’Kinny, be has obtained a deed for the land from the heirs of Hall, &b.
The other errors contain nothing material to the present éontést, except that they throw upon M’Kinny the burthefr of proving the validity of the entry of Barbour, &c,
Scott, Gilpin and Watts all urge the superiority of the claim of Hall’» heirs to that of Barbour, and insist upon their right to the benefit of the. judgment at law against M’Kiuny.
In the progress of the cause, the court, on motion, dissolved M’Kinny’s injunction for all but three hundred pounds; and, on a final hearing, pronounced a decree perpetuating the injunction for$428 6l 1 Scents,the amount allowed to Gilpin under the occupying claimant law, against Hall’s heirs, for improvements oh the ⅛fid when M’Kiony ■ «old U to Scott, and interest thereon from the date of the bond, given by Hall’s heirs to Gilpin for the payment thereof; but on a subsequent day of the same term» the court *271 made an order changing the import of the decree so as to dissolve the injunction of M’Kinoy as to the residue of the judgment for which tbe injunction had not theretofore been dissolved. The court also sustained the entry of Barbour for about seventy-eight acres of the land, in contest, and decreed that Watts, Gilpin, and the heirs of Scott, (he having departed this life and the suit revived against his heirs,) should severally convey to M’Kinoy, by a quit claim deed, such interest and title to tbe land conveyed by M’Kinny to Scott as either of them were entitled to by deed or descent from Scott, or any other person claiming under him, &c.; and that the heirs of Hall and Hart should convey to M’-Kinny, by special warranty deed, all right, title and interest, which either of them held, at the commencement of M’Kiuny’s suit, in the land to which the entry of Barbour was supposed to be the paramount and superior claim.
To reverse this decree, M’Kinny has prosecuted this writ of error, with supersedeas.
From tbe preceding statement it must be perceived, that In deciding on the relief sought by M’Kinny; tbe validity of Barbour’s entry, forms an essential enquiry. — It is in tbe following words:
May 18, 1780, — Richard Barbour enters oBe thousand acres upon a treasury warrant, on a branch of Licking creek adjoining Beuj Harrison’s preemption on the north east, to include an improvement made in 1776, at the head of a cpriDg.
At the date of Barbour’s entry, Harrison seems to have bad no entry^ with the surveyor, but he had, before then, obtained from tbe proper authority, the following certifí-cate:
April 20, 1780. — Benjamin Harrison this day claimed a pre-emption of 1000 acres of land at the state price, iu the district of Kentucky, on account ol marking and improving the same in the year I77tí, lying at the head of tbe west fork of Licking creek, about three miles from John Morgan’s cabbin, on a branch which empties iuto tbe creek about one quarter of a mile above the said cabbin, to include his improvement and two springs on each side of the said branch, satisfactory proof being made to the court, they are of opinion that the said Harrison has a right to a WeTemption of 1000 acres of land, to include the above location, and that a certifícate issue accordingly.
By the connected plat, made out in this cause, Morgan’s *272 cabbin is exhibited on a western branch of Licking, and the surveyor reports, that on a branch emptying in above the cabbin, and at the distance of about three miles and three quarters from the cabbin, there are two springs, one on each side of the branch, and at those springs there is. proven to have been an improvement in 1776.
An entry calling to ad-jam another on the north east, when that other presents a north east corner, must be surveyed by extend ng a line diagonally through the fist entry till the base of a square is obtained,thence at right angles for quantity.
Morgan’s cabbin is proven to have been notorious at the date of the certificate of Harrison, and the evidence con-' duces in some degree to prove the notoriety of the improvement at the springs; but admitting,the improvement not to have acquired that degree of notoriety which would have been necessary to sustain Harrison’s claim, if the certificate contained no other calls; yet when connected with the descriptive calls in the certificate, aided by the notoriety of Morgan’s cabbin, we apprehend, a subsequent locator could have had no reasonable difficulty in assertainiog with certainty, the springs and improvement.
The certificate of Harrison, therefore, should be surveyed in a rectangular figure, with lines at the cardinal points, so as to make the ¿entre of the improvement and springs, the centre of the survey. When thus made, the survey will present a north east corner, and on that corner Barbour’s entry must be surveyed, and extending from thence, equal distances, with each line, so far, that a line from one extreme to the other, extended diagonally through Harrison’s survey, will be equal to the base of a square of 1000 acres; and from the termination of the diagonal line, and at right angles thereto, lines mast be extended so far that a direct line from one to the other, will include the quantity of 1000 acres on the north east of Harrison.
Barbour’s entry, when thus surveyed, will not only be on the north cast of Harrison, but will also lie on a branch of Licking, and include an improvement, proven to have been made in 1776, at the head of a spring. The improvement so included, it is true, is not proven to have possessed notoriety at the date of Barbour’s entry, but we have seen that Harrison’s claim might have been readily found, and from the contiguity of the spring to the branch upon which Barbour calls to lie, there could have been no ditficultyjn finding the spring and improvement.
For so much of the land ih contest, therefore, as may be contained in the entry of Barbour when thus surveyed, and which is included in his survey as made, the court below correctly held the entry of Barbour to be superior and para *273 mount to the claim of Hall’s heirs. But admitting the validity of Barbour’s entry, the enquiry arises as to the nature and extent of the relief which should be given to M’Kinny?
on selling defective ⅛ ⅛⅛⅛ forthe money paid & infer-havebUcted\t fOP the vaiue of improve-on s“"e. tobé allowed
By the recovery in ejectment by Hall’s heirs against Gil-pin and Watts, the covenant contained in M’Kinny’s of warranty to Scott was broken, and in the action at law, brought for that breach, the damages recovered ought to have been regulated by the consideration paid by Scott for tile land and interest, deducting therefrom the value of the improvements on the land when M’Kinny sold to Scott, and for which Gilpin appears to have received a bond from the heirs of Hall. Those improvements appear, however, not to have formed any consideration in estimating the damages at law, so that, if the entry of Barbour had not been sustained, the only relief to which M’Kinny would be entitled, is for the value of the improvements.
But relief is not sought by M’Kinny exclusively on the ground of his not having obtained a credit for the improvements on the land when he sold it to Scott; he relies on the entry of Barbour; an entry which we have seen contains the requisite precision and certainty to a valid entry, and when correctly surveyed, will contain about one half of the land sold by M’Kinny to Scott, including that part upon which there were hnprovemenis at the time of Scott’s purchase.
Ob deciding on the grounds thus relied on for relief by M’Kinney, the only difficulty grows out of the nature of the relief which should be afforded. That he is entitled to relief, is perfectly obvious. By his deed to Scott, it is true, he conveyed all the interest, either legal or equitable, which he possessed in the land, but under his covenant of warran-tv, he became liable at law immediately upon the recovery in the ejectment by Hall’s heirs, and that liability followed by the action of Scott upon his warranty, must, of necessity, have authorised M’Kinny to resort to a court of equity for the purpose of investigating the validity of the entry through which he derived the claim he sold and conveyed to Scoit. Gilpin and Watts, the alienees of Scott, might, no doubt, under their deeds, have applied to the chancellor for the purpose of investigating Barbour’s entry; but, as instead of doing so, they have thought proper to urge their legal demand against M’Kinny on his covenant of warranty, M’Kinny roust be admitted to have such an interest as will allow him, by bringing all proper parties before the court, to investigate the validity of the entry.
A vendee will not be eompeli’d to receive a defective title & tho’ ttie title be defective as to a part on! y, of the land sold e-quiiy will not compel - tli£ vendee to complete the contract as to the part saved.
In case of eviction from land . old and recovery had against the vendor on his •warranty, vendor is entitled to are-c’nveyance ot ⅛’claim sold
Possessing the right to investigate, and having, as we have seen, succeeded in establishing the validity of Barbour’s entry, it necessarily follows, that M’Kinny is entitled to solne relief: for, having sold to Scott land to which, in equity, he held the superior right, common justice forbids that M’Kinny should be compelled to restore the money received by him for the land with interest, and not to be secured in the title to the land.
But the enquiry recurs, as to the nature and extent of the relief which should be given to M’Kinny?
Had the entry of Barbour been sustained for all the land recovered by Hall’s heirs, it would be a question of doubt, whether Gilpin and Watts could be compelled to receive from those holding the title of Hall’s heirs, a surrender of that title. If they could, it must be upon the principle, that a vendor, after a breach of his covenant of warranty, may resort to the chancellor to enforce a specific execution of his covenant, to warrant and defend the land against the claim of others.
W’helher, however, such a decree could be rendered, it is not necessary for this court, now, to decide; for be that as it may, we apprehend, Gilpin and Walls cannot be compelled to receive a surrender of the title of Hall’s heirs to the land for which the entry of Barbour is proven to be valid. For we have seen, that the entry of Barbour, when properly surveyed, will not include more than about one half the land which was recovered by Hall’s heirs, and it is well settled that the chancellor will never, at the instance of a vendor, compelí the purchaser to receive a partial execution of the contract; and in the present case, neither the purchaser from M’Kinny, nor his alienees, have expressed a willingness to receive a title to that part of the land embraced by Barbour’s entry; but, to the contrary, have insisted upon their right to have the benefit of the judgment recovered at law agaiust M’Kinny.
If, then, we are correct in supposing that Gilpin and Watts ought not to be compelled to receive a convey ance from those holding the title of Hall’s heirs, it lollows, that the court decided correctly in decreeing the conveyance to be made to M’Kinny. For being liable at law under bis covenant of warranty, M’Kinny should be restored to all the equity of Barbour’s entry which might have been a* vailing to Watts and Gilpin, but which they seem to have abaudoned by their defence; and consequently, to the ex *275 tent of that equity, all those pretending an interest m the tilie of Hall’s heirs, should be compelled to convento M’Kiuny.
If a vendor ,s impleaded *°1’|)¡a tyandareco-yery had, he ls 1,°,ll.live1 a improvmer.ts on the land, 16 entitled to a reconveyance but 11 he sp,s eviction- and prevails ther-j|'e ments ¡ire his o»11 ⅛ is not 10 a
if avt nitor 'sells mods ^"ecb ‘*081⅞^ \ & reCov-cry had, if ve"d?r ailer‘ a 'pre,aj\. mg equity ⅛-gamst ,l,e é-deeThah'be aiiowed for his improve-⅛'liable tol-rents.
Instead, however, of the decree which was pronounced by the court below, it would have been more correct, to have decreed, that the heirs of Hall and Hart, and Scott, G-’lpin and Watts, should, severally, convey to M’Kinny by deeds of special warranty.
But is M’Kinny entitled to no other relief ?
We think he is. A judgment has gone against him at law, not only for the purchase money received by him f.r the laud from Scott, but also lor interest, without any deduction for either the rents, or improvements which were on the lands when it was sold to Scott.
We have already seen what forms the criterion of damages at law in ordinary cases on a covenant of warranty, and Were the circumstances the same in equity, the same rule should prevail. But it will be perceived, that the entrj ot Barbour, is sustained for that part of the land which was sold by M’Kiuny to Scott, and upon which there were no improvements at the time of sale, and ihe land so improved is to be restored to M’Kinny — M’Kinny, therefore, as he obtains the land with its ameliorations, ought not to be pai'd for the improvements. Gilpin, it is true, may have received from the heirs of Hail, compensation for those improvements, under the occupjing claimant law; but as the l^tid is to be taken from them under the equily of Gilpin’s claim, the heirs of Hall will be entilled to restitution of the money which they have paid to Gilpin.
As to the purchase money received for the land from Scott, there is no doubt M’Kinny should be accountable, To that amount M’Kinny is clearly gainer by Scott’s loss, and according to the well known rules of equity, ought to make up the loss. And were t he entry of Barbour invalid, it would be equally clear, .Vi’Kinny ought to account for interest on the sale money, without any deduction for the use Which Scott and his alienees have had of the land. They would, it is true, he then gainers, but as in that case, M’Kinny would have sold land to which he had no right, their gain could not, with any propriety, be said to be M’Kinny’s loss. But as the entry of Barbour is .valid for part of the land, to that part, M’Kinny, when he sold to Seolt, must have held an equitable right, and const quently, in equily, the gain wbicu Scott and his alienees have *276 made by the use and possession of that part, is a gain by JVi’Kinny’s loss.
Hardin for plaintiff, Pope for defendant.
To prevent that loss, therefore, M’Kinny has a just claim against the interest on the sale money for the value of the rents forthat part of the laud to which Barbour’s entry is sustained, and instead of the decree which was made by the court below, an account ought to have been taken of the rents from the time possession was obtained by Scott, deducting therefrom the value of the improvements made by Scott and his alienees upon that part of the land to which M’Kinny is to be restored; and for tht bailarme of ¡he rents, the injunction of M’Kinny should have been made perpetual, unless the rents exceed the interest wliieh was recovered at law against M’Kinny, but in no event, should the injunction be perpetuated for more than the interest.
The decree must be reversed with cost, the cause remanded to the court below, and such orders and decrees there made, as may be consistent with this opinion.